IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CECIL GABY                                                           PETITIONER

vs.  Criminal Case No. 2:19-20039

UNITED STATES                                         RESPONDENT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Cecil Gaby ("Petitioner") filed his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") on March 13, 2023. (ECF No. 31). The Court directed the United States (hereinafter "Government") to respond, and it did so on April 19, 2023, (ECF No. 40), with Petitioner filing a supplemental pleading on June 5, 2023. (ECF No. 45). The matter was referred by United States District Judge P. K. Holmes, III to the undersigned for Report and Recommendation pursuant to Rule 72.1 (VIII)(B)(1) of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas and is now ripe for consideration.

I. **STATEMENT OF FACTS**

    A. **Factual and Procedural Background**

In May of 2017, United States Drug Enforcement Agency task force officers received complaints that Petitioner and another physician were operating their clinic as a "pill mill." (ECF No. 14 ¶ 9). Further investigation revealed that one of Petitioner's patients ("T.M.") died of combined drug toxicity after Petitioner prescribed high dosage amounts of opioids and benzodiazepines. (ECF No. 14 ¶¶ 26-27). On December 18, 2019, Petitioner waived indictment and was charged by Information with one count of distribution of a controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1), Title 21, United States Code, Section 841(b)(1)(C) and 21 C.F.R. § 1306.04. (ECF Nos. 1-2).

Petitioner pled guilty to one count of intentionally transferring oxycodone to another person by prescribing it outside the usual course of professional practice and without legitimate medical purpose and knowingly distributing a controlled substance. (ECF No. 5). He was exposed to imprisonment with a statutory maximum sentence of twenty (20) years. (ECF No. 5 pp. 8-9).

In determining the appropriate sentence, Judge Holmes calculated Petitioner's guideline range (168-210 months), which took into consideration the base offense level of 38, which was adjusted to 35 for Petitioner's acceptance of responsibility, and Petitioner's criminal history category of I under the Federal Sentencing Guidelines. (ECF No. 14 ¶¶ 69, 71, 91, 120). Judge Holmes sentenced Petitioner to 120 months imprisonment, three years supervised release, and a $100 assessment fee. (ECF No. 24 pp. 2-3, 6).

### B. Petitioner's Section 2255 Motion

Petitioner filed his Motion on March 13, 2023, alleging that -- because of his medical condition that impacted his ability to detect deceitfulness -- his conviction should be vacated due to a lack of evidence that he knowingly or intentionally acted in an unauthorized manner. (ECF No. 31 p. 4). Petitioner also alleges his sentence was imposed in violation of his right to effective counsel. (ECF No. 31 p. 5). Petitioner advances the following arguments: 1) that his stroke caused him to suffer from cognitive deficiencies that "decreased his ability to detect deceitfulness" in his patients, (2) the Government failed to prove that he knowingly or intentionally acted in an unauthorized manner, (ECF No. 31 p. 4), and (3) that his counsel provided ineffective assistance by not presenting evidence showing Petitioner's decreased ability to perceive deception in people

and by not moving to dismiss due to insufficient evidence of Petitioner's mental state. (ECF No. 31 p. 5).

Petitioner advises that he suffered a stroke in December of 2015 while working at Sparks Regional Medical Center. After experiencing double vision, facial droop, and gait issues, Petitioner went to the emergency room, and the doctors at Sparks confirmed his stroke and treated him with anti-stroke medication. Within an hour, his symptoms resolved. He was kept in the hospital for three days for observation and testing and was allowed to return to work three days after being discharged, and he did. (ECF No. 31-1 p. 2).

Several years later, Petitioner realized his stroke had more damage than he and the physicians initially thought, including a significant effect on his ability to make proper decisions. This was manifested twice while Petitioner was caring for premature newborns that suffered some complications due to Petitioner's poor treatment decisions. As a result, Sparks ordered him to go on sick leave pending evaluation. (ECF No. 31-1 p. 2). After the neurology and psychology evaluation report was issued to Sparks, Petitioner was informed that the hospital did not have the necessary resources to monitor the Petitioner and he could not return to work. (ECF No. 31-1 p. 3).

He was given the option to resign to avoid his evaluation being reported to the medical board or to not resign and be evaluated by the credentials committee, which subjected him to suspension of hospital privileges and report to the medical board. Although he chose to resign, Petitioner's evaluation was still reported to the medical board. Petitioner remained without a job until he began working with Dr. Hinderliter, (ECF No. 31-1 p. 3), following a neurology reevaluation which allowed him to work in office practice environments. (ECF No. 31-1 p. 4).

Petitioner contends that his stroke caused him to suffer from cognitive deficiencies that "decreased his ability to detect deceitfulness" in his patients. As a result of these deficiencies, Petitioner says he took his patients at face value as truthful, claiming his medical records support this contention. (ECF No. 31 p. 4).

Petitioner further alleges that this inability to detect deceitfulness resulted in the Government failing to prove that he knowingly or intentionally acted in an unauthorized manner. According to Petitioner, by failing to prove the necessary scienter to commit the offense, the Government failed to prove his actions were criminal, in accordance with *Ruan v. United States*.[1] (ECF No. 31 p. 4).

Finally, Petitioner argues his counsel provided ineffective assistance by not presenting evidence showing Petitioner's decreased ability to perceive deception from people and by not making a motion to dismiss due to insufficient evidence that Petitioner knowingly or intentionally acting in an unauthorized manner. Petitioner further explains that no motions were filed advising the Government of the medical condition of Petitioner. (ECF No. 31 p. 5).

Petitioner insists counsel intentionally failed to provide the Government with this information due to issues relating to the validity of the plea that Petitioner signed into at counsel's advice. Petitioner says he entered into the plea due to his belief in Counsel's statements that he was guilty of writing the prescriptions. Petitioner contends this prejudiced the case due to its relevance to Petitioner's belief that he was acting in the normal course of medical practice and legitimate medical purpose. (ECF No. 45, p. 2).

In response, the Government argues Petitioner's claim that his actions were the result of cognitive deficiencies caused by a stroke is without merit. The Government reasons that Petitioner

---

[1] *Ruan v. United States*, 142 S.Ct. 2370 (2022)

knew the prescriptions he wrote were not authorized, so his alleged cognitive deficiencies should not relieve him of criminal liability for his actions. The Government also pushes back on Petitioner's argument by saying the medical records attached to his motion do not support his claim. (ECF No. 40, p. 6).

In a report in June of 2016, Dr. Stephen B. Gemmell of The Memory Center noted that Petitioner was unconcerned about his cognitive and functional skills and abilities. At that time, Petitioner accredited cognitive and judgment issues he observed in January of 2016 to medication he was no longer taking. Dr. Gemmell also reported that Petitioner's memory, insight and judgment were without concern. In another report in June of 2016, Dr. Margaret Tremwel noted that Petitioner's mild cognitive impairment may slow language processing for speech and receptive language which could cause him to have occasional word finding issues. The Government maintains that Petitioner's medical records do not in any way indicate any cognitive impairment that would prevent him from forming the requisite intent to commit the offense or otherwise excuse his actions from criminal liability. (ECF No. 40, p. 7).

The Government argues that Petitioner's second claim – that the Government failed to prove the necessary scienter to commit the offense – should be rejected because it was not raised on appeal. (ECF No. 40, p. 4).

The Government further argues that Petitioner's claim that the Government failed to prove the necessary scienter to commit the offense should also be rejected because it is without merit. The Information placed Petitioner on notice that a showing that he intentionally acted in an unauthorized manner was required to establish the offense. When the parties entered into a plea agreement and Petitioner pled guilty to the Information, he admitted that he intended to prescribe

the dosages of controlled substances to T.M. outside the usual course of professional practice and not for a legitimate medical purpose. (ECF No. 40 p. 5).

Petitioner agreed that if the case went to trial, the Government would be able to prove that he knew that many of the individuals to whom he prescribed opioids traveled long distances within the state of Arkansas; were seeking dangerous combinations of oxycodone, hydrocodone, and alprazolam; suffered from opioid addictions; had histories of delivering opioids and benzodiazepines; displayed drug-seeking behavior; provided scant medical histories; and paid with cash. Petitioner also agreed that the Government would be able to prove that he conducted superficial medical examinations, (ECF No. 40 p. 5), maintained insufficient records, systemically failed to explore alternatives or explain the risk associated with taking opioids with benzodiazepines, prescribed opioids — and consistently increased the prescription — to T.M. despite the fact that he tested positive for illegal street drugs, reported only moderate pain, and appeared to be addicted to and abusing the medication as reported to Petitioner by the family members of T.M. The Government contends that these facts, which Petitioner admitted at the hearing could be proven by the Government, are clearly sufficient to prove that he intentionally acted in an unauthorized manner. (ECF No. 40 p. 6).

Lastly, the Government rejects Petitioner's claim that his counsel provided ineffective assistance because it is also without merit. (ECF No. 40 p. 7). Petitioner suggests his counsel provided ineffective assistance by failing to move to dismiss the charge in the Information due to insufficient evidence that he had the scienter required under *Ruan*.[2] The Government maintains that Petitioner waived indictment, consented to the filing of the Information, and pled guilty, so there was no trial before which counsel could have made a motion to dismiss the charge due to

---

[2] *Id.*

insufficient evidence. Petitioner asserts that his lawyer told him he was guilty because he wrote the prescriptions, but the Government states that the record conclusively established that Petitioner was aware that his guilt was being determined based on his own conduct, not the conduct of others, and that he was aware of exactly what was required to be proven for him to be found guilty. (ECF No. 40 p. 8).

Petitioner further argues that his counsel provided ineffective assistance by failing to provide evidence of his alleged cognitive deficiencies. The Government pushes back on this argument by stating that Petitioner's medical records only show potential impairment to his language processing. This type of impairment could not conceivably have a bearing on Petitioner's guilt or innocence of the offense charged. Thus, counsel did not provide ineffective assistance by failing to move to dismiss or failing to provide evidence of Petitioner's alleged cognitive deficiencies. (ECF No. 40 p. 8).

According to the Government's Response, in addition to failing to demonstrate that his counsel's performance was deficient, Petitioner also failed to prove that the alleged deficient performance prejudiced his defense. (ECF No. 40 p. 8). Petitioner was clearly aware of the required proof when he entered his plea. He was not convinced to plead guilty based on a misunderstanding of the law, and his plea was voluntary. This Court determined that he was competent to both waive indictment and enter his plea of guilty. He was not induced to plead guilty due to his cognitive condition, and his counsel informing the court of his language-processing issues would not have changed the result of this case. (ECF No. 40 p. 9).

## II. DISCUSSION

### A. Procedural Hurdles

#### 1. Petitioner's claim is procedurally defaulted and cannot be raised on a Section 2255 Motion.

Mr. Gaby claims that he is innocent due to the lack of evidence that he knowingly or intentionally acted in an unauthorized manner. Mr. Gaby did not file an appeal herein and thus, did not raise this issue post-sentencing.

A claim is procedurally defaulted and cannot be raised on a 28 U.S.C. § 2255 motion where a petitioner fails to raise the issue on direct appeal. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000). The United States Supreme Court has previously held that "a collateral change may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) (internal citations omitted). A motion filed pursuant to § 2255 is not a substitute for direct appeal. *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993). This rule applies whether the conviction was obtained through a trial or through entry of a guilty plea. *United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998).

Procedural default may be excused only where a petitioner can show (1) a cause that excuses the default and (2) actual prejudice from the errors asserted. *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Dejan*, 208 F.3d at 685; *United States v. Bailey*, 235 F.3d 1069, 1072 (8th Cir. 2000). The "cause and prejudice" exception does not apply to claims that are not constitutional or jurisdictional in nature. *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Mr. Gaby's argument relies on the opinion of *Ruan v. United States*, 142 S.Ct. 2370 (2022), which involved an issue of statutory interpretation. Thus, Mr. Gaby's claim is not constitutional or jurisdictional in nature and should therefore be dismissed due to his procedural default.

### 2. Petitioner's claim lacks merit.

Mr. Gaby's claim should also be dismissed because it lacks merit. In his Motion, Mr. Gaby asserts his guilty plea was not knowing, intelligent or voluntary because of his alleged medical condition. An unknowingly and involuntary plea claim is rejected where petitioner "appeared to possess a fundamentally accurate factual understanding of his current legal proceedings, including the criminal charges against him and the responsibilities of the judge, prosecutor, and defense attorney." *United States v. Murphy*, 572 F.3d 563, 570 (8th Cir. 2009). During the plea colloquy, Judge Holmes asked Mr. Gaby if he understood what was happening in the court proceeding, and Mr. Gaby responded, "Yes, I do." (ECF. 37 p. 4). Mr. Gaby further indicated that he understood the agreement and that the plea agreement contained his full understanding of the agreement he and his lawyer negotiated with the Government. (ECF. 37 p. 8).

"Even if suffering from a disease, a defendant's plea is valid if the record demonstrates that he understood the charges against him, was not dissatisfied with the services rendered by his attorney and entered his plea knowingly and voluntarily." *United States v. Rollins*, 552 F.3d 739, 741-42 (8th Cir. 2009). Mr. Gaby stated that he received a copy of the Information detailing the Government's proposed charges and discussed those charges with his attorney. (ECF. 37 p. 4) When asked if he had been fully satisfied with the counsel, the representation, and the advice he received from his lawyer, Mr. Gaby stated, "Yes. I am." (ECF. 37 pp. 4-5). Mr. Gaby also detailed that no one made any promises to get him to sign the agreement and that no one forced him to plead guilty. (ECF. 37 p. 8). The Court acknowledged Mr. Gaby's health condition of having had heart attacks and a stroke, (ECF. 37 pp. 18-19), and still accepted his guilty plea. (ECF. 37 p. 17).

"A defendant is competent if [he] possesses a sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings." *United States v. Pacheco*, 641 F.3d 970, 974 (8th Cir. 2011) Mr. Gaby indicated that he consulted with his lawyer about the Information and plea agreement. (ECF. 37 p. 4). Mr. Gaby stated that he understood the stipulated facts. (ECF. 37 p. 12). Mr. Gaby listened to the Government detail the factual basis for his plea (a plea, incidentally, which he had already approved and signed) and agreed that if his case went to trial, the Government would be able to prove the factual basis contained in his plea agreement. (ECF. 37 pp. 13-16). The Court found that Mr. Gaby was fully competent and capable of entering an informed plea; that he was aware of the nature of the charge and the consequences of his guilty plea; and that the guilty plea was a knowing and voluntary plea supported by an independent basis in fact containing all the essential elements of the offense to which Mr. Gaby pled guilty. (ECF. 37 pp. 16-17).  There is nothing in the record to suggest that Mr. Gaby's guilty plea was not knowing, intelligent and voluntary.  And even if Mr. Gaby's claim was not procedurally default, as it is here, it would still be dismissed because it is without merit.

### B.  Ineffective Assistance of Counsel

Turning to the ineffective assistance claim, Mr. Gaby's counsel was not ineffective for failing to seek a mental evaluation. Pursuant to the Sixth Amendment to the Constitution of the United States of America, criminal defendants have the right to the assistance of counsel. U.S. Const. Amend. VI.  The United States Supreme Court has recognized that the right to counsel refers to "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

To prove ineffective assistance, Petitioner must show that (1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment, and (2) his counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Under § 2255, litigants face "a heavy burden" to successfully establish ineffective assistance of counsel. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996); *De Roo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); *United States v. Osorio-Alvarado*, 2015 WL 328540, at *3 (W.D. Ark. Jan. 26, 2015). Application of the *Strickland* test "requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (cleaned up). If a defendant fails to establish either of the two prongs, the court need not address both prongs when deciding the matter. *See Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021). Mr. Gaby's ineffective assistance claim fails both *Strickland* prongs.

### 1. Counsel's performance was not deficient.

To demonstrate deficient performance, a defendant must show that the counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The defendant must show that counsel failed to uphold the duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. Courts cannot use hindsight to evaluate counsel's performance but must consider the conduct that occurred at the time of the trial. *Battle*, 19 F.3d at 1555 (citing *Strickland*, 446 U.S. at 689); *Cox v. Lockhart*, 970 F.2d 448, 455 (8th Cir.1992); *See Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991) (the reasonableness of counsel's determination must be evaluated by what defense counsel knew or should have known at the time of making the decision).

Legal counsel enjoys a presumption of competency while representing defendants in criminal matters. *United States v. Cronic*, 466 U.S. 648, 658 (1984) (citing *Michel v. Louisiana*, 350 U.S. 91, 100–101 (1955)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005). There is a strong

presumption of reasonableness for counsels' decisions given recognition of the "limited" time and resources that defense counsel must choose from "countless" strategic options. *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 106-07 (2011)). Counsel is deemed ineffective only when their conduct falls below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Wiggins v. Smith*, 539 U.S. 510, 522 (2003). Strategic decisions are "virtually unchallengeable" when made after "thorough investigation of laws and facts." *Battle*, 19 F.3d at 1556 (citing *Strickland*, 466 U.S. at 690). Performance is considered deficient if there is a "probability sufficient to undermine confidence in the trial's outcome." *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993). When seeking to rebut the presumption of counsel's competency, mere argument – in the absence of evidence – will not overcome "the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Dunn*, 141 S. Ct. at 2407 (quoting *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (internal quotation marks and brackets omitted). Strategic choices may still be within the range of acceptable performances even if defense counsel has a hopeless attitude regarding the outcome of a case. *Strickland*, 466 U.S. at 699.

The *Strickland* case is instructive. In *Strickland*, Washington pursued an ineffective assistance of counsel claim, alleging ineffectiveness when his counsel failed to request a pre-sentencing report, psychiatric evaluation, or further mitigating evidence. The court concluded that defense counsel's strategy was reasonable because the defendant pled guilty and waived the right to a jury trial. Here, Mr. Gaby alleges his counsel's performance was deficient because counsel failed to request a psychiatric evaluation after Gaby waived his right to trial by pleading guilty. (ECF No. 37 p. 16). This argument is not convincing. Because Mr. Gaby pled guilty and waived his right to trial, defense counsel's strategy to not request a psychiatric evaluation is considered

reasonable – this alleged error could not have "undermine[d] confidence in the trial's outcome." *Foster v. Lockhart*, 9 F.3d at 726. Nevertheless, even if Mr. Gaby had not pled guilty and waived his right to trial, counsel's decision not to request mental evaluation would not now entitle Mr. Gaby to § 2255 relief.

A mental evaluation is appropriate "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241; *see Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (the test for mental competency is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him").

Mr. Gaby manifested his ability to consult with his attorney with a reasonable degree of rational understanding several times throughout his plea colloquy. When asked if he had received a copy of the Information that the Government proposed to charge him with and if he had discussed the charges with his lawyer, Mr. Gaby answered, "Yes, I did." (ECF No. 37 p. 4). When asked if he had discussed his waiver of Indictment with his lawyer, Mr. Gaby responded, "Yes, I have." (ECF No. 37 p. 6). When asked if he had an opportunity to read and discuss his plea agreement with his attorney before he signed it, Mr. Gaby answered, "Yes, I did," and when asked if the plea agreement contained his full understanding with reference to the agreement that he and his lawyer negotiated with the government, Mr. Gaby said, "Yes." (ECF No. 37 p. 8). Mr. Gaby also demonstrated a rational as well as factual understanding of the proceedings against him. When asked if he understood the plea agreement, Mr. Gaby said, "Yes." He further indicated that

understood the effects and finality of the plea agreement. (ECF No. 37 pp. 11-13). Mr. Gaby has not illustrated, through his argument or any proof in the record, that he was suffering from a mental disease or defect rendering him mentally incompetent during his criminal case. Similarly, Mr. Gaby has not illustrated that his counsel's conduct fell below the appropriate standard as he has failed to present any theory that his counsel's performance with respect to his waiver, plea or sentencing was inadequate or deficient. Thus, the first prong of the *Strickland* test has not been met.

### 2. Petitioner was not prejudiced by counsel's decision.

Ineffective assistance of counsel requires not only a showing of deficiency from counsel, but also that the deficiency caused prejudice against the defendant "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *see also DeRoo*, 223 F.3d at 926 (denying petitioner's motion to dismiss when he failed to show prejudice even if his counsel's conduct had been unreasonable). A reasonable professional error by counsel will not justify setting aside a criminal judgment if the error did not affect the judgment. *Id*. at 691; *United States v. Morrison*, 449 U.S. 361, 364–365 (1981). Rather, there must be a reasonable probability, one undermining confidence in the outcome, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996); *See Pfau v. Ault*, 409 F.3d 933, 940 (8th Cir. 2005) (holding that counsel's alleged error did not provide a reasonable probability that would have resulted in reversal at the trial court). The reasonable probability standard is less onerous than the preponderance-of-the-evidence standard. *Strickland*, 466 U.S. at 694.

The likelihood of a different outcome, "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Where a court finds it easier to dispose of an

ineffectiveness claim for lack of sufficient prejudice, then it should do so. *Strickland*, 466 U.S. at 697. Unlike the first prong of the test, when examining the potential prejudice faced by the defendant, the court is allowed to issue judgment based on hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993). Even with the benefit of hindsight, establishing a sufficiently prejudicial effect on the proceedings is a high bar for any defendant to clear. *See Strickland*, 466 U.S. at 700 (finding that even if Strickland's counsel had fallen below the objective standard of reasonableness, the defendant failed to show a sufficiently prejudicial effect to warrant setting aside the death penalty based on the defendant's conduct.)

Here, even if Mr. Gaby's counsel's performance fell below the objective standard of reasonable performance, it likely would not have prejudiced the proceedings. Given the totality of evidence, specifically the medical records Mr. Gaby submitted to the Court detailing that his mild cognitive impairment may slow language processing for speech and receptive language which could cause him to have occasional word finding issues, (ECF No. 20-2), but supporting that his memory, insight, and judgment **were without concern**, (ECF No. 20-5) (emphasis added), the outcome of the proceedings would remain the same regardless of Mr. Gaby's counsel's performance with respect to a competency examination. Thus, even if Mr. Gaby's counsel's performance fell below the objective standard of reasonable performance – and the Court does not find that it did – counsel's performance would not have prejudiced the proceedings.

### C. Evidentiary Hearing

An evidentiary hearing is unwarranted in this case. Federal courts must consider whether an evidentiary hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Where "the record refutes the applicant's factual allegations or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007). Before granting an evidentiary hearing, a court must determine whether the evidence can be legally considered, as federal courts "may never needlessly prolong a habeas case." *Shoop v. Twyford*, 142 S. Ct. 2037, 2038 (2022).

A petitioner is entitled to an evidentiary hearing for a habeas motion unless "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *United States v. Ledezma-Rodriguez* 423 F.3d 830, 835-36 (8th Cir. 2005) (alteration in original) (quoting 28 U.S.C. § 2255); *United States v. Maddox*, No. 5:12-CR-50074-001, 2015 WL 1643377, at *7 (W.D. Ark. Apr. 13, 2015). No evidentiary hearing is required if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusory." *Evans v. United States*, 200 F.3d 549, 551 (8th Cir. 2000) (assuming that the factual assertions were accurate, the petitioner still would not have been entitled to relief.)

Mr. Gaby alleges his stroke caused him to suffer from cognitive deficiencies that "decreased his ability to detect deceitfulness" in his patients. As previously stated, Mr. Gaby's first argument is contradicted by the record. (ECF No. 20-2; ECF No. 20-5). Mr. Gaby's second argument, that his inability to detect deceitfulness resulted in the Government failing to prove that he knowingly or intentionally acted in an unauthorized manner, is also contradicted by the record. (ECF No. 37 pp. 4, 8, 12, 16-17). Finally, Mr. Gaby contends that his counsel provided ineffective assistance by not presenting evidence showing his decreased ability to perceive deception from people and by not making a motion to dismiss due to insufficient evidence that he knowingly or intentionally acted in an unauthorized manner. Mr. Gaby's final argument is conclusory rather than factual, but accepting this argument as true does not entitle him to relief.

Here, resolution of each of Mr. Gaby's claims can be accomplished through reviewing the record and applicable law. Therefore, summary dismissal of Mr. Gaby's § 2255 Motion without an evidentiary hearing is recommended. *See McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013).

### D. Certificate of Appealability

A Certificate of Appealability is also unwarranted in this case. After a denial of a 28 U.S.C. § 2255 Motion, a Certificate of Appealability is needed for an appeal. When determining whether a Certificate of Appealability should be granted under 28 U.S.C. § 2253(c), there must be "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A Certificate of Appealability may be issued under 28 U.S.C. § 2253 only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). A "substantial showing" requires the demonstration "that reasonable jurists could debate whether the petition should have been resolved in a different manner" or that the issues deserved further proceeding. *Slack v. McDaniel*, 529 U.S. 472, 483-84 (2000). A "substantial showing" is found if "a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

As noted herein, Mr. Gaby alleges that he was denied effective assistance of counsel. (ECF No. 31). After carefully considering Mr. Gaby's habeas petition, the undersigned finds that he has failed to make a substantial showing of the denial of a constitutional right because he fails to show how his counsel's performance was unreasonable, ineffective, or prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Rather, Mr. Gaby's arguments are contradicted by the record, are conclusory, and do not establish prejudice. (ECF No. 20-2; ECF No. 20-5; ECF No. 37 pp. 4, 8, 12, 16-17). Thus, it is recommended that Mr. Gaby's request for a Certificate of Appealability be denied.

III.     **CONCLUSION**

For the reasons stated herein, it is recommended that Mr. Gaby's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody in the Western District of Arkansas, Fayetteville Division, (ECF No. 31), be **DENIED**; that Mr. Gaby's Motion be **DENIED WITHOUT A HEARING;** and that a Certificate of Appealability be **DENIED**.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

**RECOMMENDED** this 15th day of December 2023.

*Christy Comstock*
**C**HRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE